IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| R.M.B., by his next friends and parents, Robert Bruce Bays and Linda Markham Bays;     Plaintiffs | )<br>)<br>)<br>) |
| v. | ) Case No. 6:15-CV-00004-NKM |
| | ) |
| BEDFORD COUNTY (VIRGINIA) SCHOOL BOARD; *et al.*     Defendants | )<br>)<br>) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff R.M.B., by his next friends and parents, Robert Bruce Bays and Linda Markham Bays, files this Memorandum in Support of his Motion for Preliminary Injunctive Relief.

INTRODUCTION

R.M.B. was denied due process at his disciplinary hearing and suspended for 364 days. He requests that this Court enter a preliminary injunction to immediately reinstate him as a student in the Bedford County Public Schools (BCPS), at Stanton River Middle School.

Defendant Wilson, an Assistant Principal at Bedford Middle School (BMS), accused Plaintiff R.M.B., an 11-year-old student at BMS, of possessing marijuana at school. Defendant Calohan, the school resource officer, field-tested the purported marijuana. The results were negative. Nonetheless, Defendant Wilson pursued administrative discipline against R.M.B. for the possession of marijuana that resulted in a 364-day suspension. No one at the disciplinary hearing would answer overt and direct questions about whether the crumpled leaves found in the 11-year-old's backpack were

marijuana. Despite no evidence that the crumpled leaves were marijuana Defendant Duis suspended R.M.B. for 364 days.

R.M.B. and his parents learned of the negative field tests more than two months later when they appeared for trial of the corresponding criminal charge for possession of marijuana, which the Court was dismissed by agreement of the parties due to the absence of any evidence that the leaves were marijuana.

Plaintiff has filed a Complaint alleging, among other claims, a violation of his due process right to a fair hearing. Due to the irreparable harm being suffered by R.M.B. in being denied a free public education, R.M.B. seeks an order from this Court immediately reinstate him as a student in the Bedford County Public Schools (BCPS), at Stanton River Middle School.

## FACTS[1]

R.M.B. is an 11-year-old boy who lives in Bedford County, Virginia, and was enrolled as a student in the BCPS at BMS for the 2014-15 school year. (Complaint at ¶ 6.) R.M.B. was enrolled as a student at BMS for the 2014-15 school year. He is a bright young man who tested into and received gifted education services, was a member of the BMS band and otherwise availed himself of the full panoply of opportunities available to students at BMS. (Complaint at ¶ 17.)

On or about September 22, 2014, R.M.B. was called into Defendant Wilson's office at BMS. (Complaint at ¶ 18.) Wilson accused R.M.B. of being in possession of marijuana. (Complaint at ¶ 19.) Wilson then searched R.M.B.'s backpack and found crumpled leaves. (Complaint at ¶ 20.) Wilson believed the crumpled leaves were

---

[1] Plaintiff hereby incorporates the facts from the Complaint.
[2] School Administrator's Report by Defendant Wilson attached hereto as Exhibit 1.

marijuana. (Complaint at ¶ 21.) Wilson called upon Defendant Calohan, the BMS School Resource Officer, to further investigate R.M.B.'s alleged possession of marijuana. (Complaint at ¶ 22.) Defendant Calohan tested the crumpled leaves to determine whether the leaves were marijuana. (Complaint at ¶ 23.) Calohan's field test was negative for marijuana, as were two more field tests. (Complaint at ¶ 24).

Wilson knew the field tests conducted by Calohan were negative for marijuana. (Complaint at ¶ 25.) Despite the negative test results Wilson immediately suspended R.M.B. from BMS for 10 days and instituted administrative proceedings seeking either a 364-day suspension or expulsion of R.M.B. from the BCPS.[2] (Complaint at ¶ 28.)

Defendant Duis conducted the administrative hearing on the issue whether R.M.B. would be suspended for 364 days or expelled from the BCPS. (Complaint at ¶ 30.) At the hearing R.M.B.'s parents specifically and repeatedly asked Wilson the results of the field tests conducted by Calohan. (Complaint at ¶ 31.) At the hearing Wilson testified that he was not qualified to testify about the results of Calohan's field tests. (Complaint at ¶ 32.) Neither Wilson nor any other Defendant produced Calohan to testify at the administrative hearing. (Complaint at ¶ 33.) No evidence was presented at the administrative hearing indicating that R.M.B. possessed marijuana. (Complaint at ¶ 34.) Despite no evidence having been offered that R.M.B. possessed marijuana and despite Duis's knowledge that Calohan's field tests were negative for marijuana, Duis suspended R.M.B. for 364 days from the BCPS for the possession of marijuana.[3] (Complaint at ¶ 35.) As a consequence of Wilson's and Duis's actions R.M.B. has been and continues to be denied a free public education. (Complaint at ¶ 36.)

---

[2] School Administrator's Report by Defendant Wilson attached hereto as Exhibit 1.
[3] September 29, 2014 letter from Defendant Duis attached hereto as Exhibit 2.

ARGUMENT

**I.     Standard for Preliminary Injunction**

Preliminary injunctive relief is an extraordinary remedy, the party seeking the preliminary injunction must make a showing "[1] that he is likely to succeed on the merits; [2] he is likely to suffer irreparable harm in the absence of preliminary relief; [3] that the balance of equities tips in his favor; and [4] an injunction is in the public interest." *Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342, 346–47 (4th Cir.2009), *vacated on other grounds by* 559 U.S. 1089 (2010), *reinstated in relevant part by* 607 F.3d 355, 355 (4th Cir.2010) (quoting *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008). Each of these four factors must be satisfied. *Id.* at 347. *See also Makdessi v. Clarke*, No. 7:14CV00225, 2014 WL 2119817, at *2 (W.D. Va. May 21, 2014).

**A.  Plaintiff's Likelihood of Success on the Merits**

R.M.B. has alleged a violation of his due process rights. R.M.B. has a property right in his public education. In his disciplinary hearing, R.M.B. was denied a fair hearing, because the Defendants withheld information that exonerated R.M.B. and refused to allow the Plaintiff to examine the evidence. Furthermore, Assistant Principal Wilson accused R.M.B. of bringing marijuana to school despite the fact that he knew this allegation was not true. SRO Calohan conducted three separate field tests all of which were negative, conclusively evidencing that the crumpled leaves in R.M.B.'s backpack were not marijuana.

The case of *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), governs the due process rights of students facing short-term suspensions. In that case, the

Court said that due process requires, at a minimum, that students receive oral and written notice of the charges against them, an explanation of the evidence the authorities have, and an opportunity to present their side of the story. *Id.* at 581, 95 S.Ct. 729. The holding in *Goss* applies in the context of short-term suspensions of ten days or less. *Id.* at 576, 95 S.Ct. 729. The Court specifically states that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584, 95 S.Ct. 729.

In this case, R.M.B. was facing a recommended expulsion and was ultimately given a 364-day suspension. There is no Supreme Court case dealing with the due process rights of students facing long-term suspensions or expulsion, but it is clear that a student facing a long-term suspension should be granted greater due process protection than those facing shorter suspensions. *Goss*, 419 U.S. at 584. *See also, e.g., DeFabio v. East Hampton Union Free School Dist.,* 658 F. Supp. 2d 461, 489, 251 Ed. Law Rep. 690 (E.D. N.Y. 2009), *aff'd*, 2010 WL 3987278 (2d Cir. Oct. 13, 2010) ("Where a longer suspension is at issue, greater process may be required."); *Scott v. Livingston Parish School Bd.*, 548 F. Supp. 2d 265, 267-268, 233 Ed. Law Rep. 173 (M.D. La. 2008) (acknowledging the right to an extensive hearing and appeal process before student was placed in alternative education setting where student was expelled for possession of a controlled substance); *Vann ex rel. Vann v. Stewart*, 445 F. Supp. 2d 882, 888–889, 212 Ed. Law Rep. 746 (E.D. Tenn. 2006) (The less formal procedures noted in *Goss* apply to suspensions less than 10 days and cases involving longer suspensions or permanent expulsion may require more formal procedures.) (*citing and quoting Goss v. Lopez*, 419 U.S. 565, 584, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *Hinds County School Dist. Bd. of*

*Trustees v. R.B. ex rel. D.L.B.*, 2007 WL 2702819 (Miss. Ct. App. 2007) (holding that plaintiff was entitled more than minimal due process protection of notice and a right to be heard in his disciplinary hearing because he was facing a one-year expulsion).

To protect against "unfair or mistaken findings of misconduct and arbitrary exclusion from school," *Goss* requires that a student be given "an explanation of the evidence the authorities have." *Goss,* 419 U.S. at 584. Here, R.M.B. should have at least the protections demanded by *Goss* as he was facing a potential expulsion. In this case there was a mistaken finding of misconduct, because the Defendant Wilson refused to answer questions about the field tests of the leaves found in R.M.B.'s backpack. The very fear of the Supreme Court in *Goss* came to fruition in the present case: R.M.B. was unfairly and arbitrarily suspended for 364 days despite obvious exculpatory evidence that he had not possessed marijuana.

At the disciplinary hearing, R.M.B.'s father repeatedly asked Wilson whether the field test showed a positive result. Wilson refused to answer despite knowing that the field test results were negative. The results of the field tests were not presented at the disciplinary hearing. The sufficiency of procedures provided to students being disciplined depends on the totality of the circumstances at hand. *Keough v. Tate County Bd. of Educ.,* 748 F.2d 1077 (5th Cir.1984). In a disciplinary hearing to determine if an 11-year-old student had marijuana in his backpack, "sufficient" procedures certainly would dictate that the decision makers be made aware of a negative field test, conclusively demonstrating that the child had not committed the violation of which he was accused.

Furthermore, considering the totality of the circumstances surrounding R.M.B.'s suspension or any student disciplinary hearing, due process requires that the school

officials, tasked to work for the students' best interest, conduct themselves honestly and fairly. "[T]he concept of due process is premised upon fairness and reasonableness in light of the totality of circumstances." *Hillman v. Elliott*, 436 F. Supp. 812, 816 (W.D. Va. 1977) *citing Ingraham v. Wright*, 525 F.2d 909, 917 (5th Cir. 1976). Looking at the "totality of the circumstances," there is no doubt that R.M.B. was not afforded a fair and reasonable hearing. The 11-year-old's Assistant Principal lied at the hearing: he advocated the discipline of R.M.B. for possession of marijuana at school, despite the fact that he knew no evidence existed that the leaves in R.M.B. possession were marijuana.

The best interest of students and fairness itself demands that exculpatory evidence, like a criminal proceeding,[4] not be hidden from a student and his agents at an expulsion or suspension hearing. In a criminal case, the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice [and] [t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Fitzgerald v. Bass*, 6 Va. App. 38, 45, 366 S.E.2d 615, 619 (1988) (*internal citations omitted*). Here, Vice Principal Brian Wilson failed to inform Dr. Duis, the administrator of the disciplinary hearing, of the negative field tests. Even more appalling, Mr. Wilson persisted that R.M.B brought marijuana to school when he knew that was a lie.

Applying the three-factor balancing test for procedural due process claims set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), further aids the Plaintiff's claim. The *Mathews* factors are: (1) the private interest that is affected by the official action; (2) the probable value, if any, of additional or substitute procedural

---

[4] *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed.2d. 215, 83 S.Ct. 1194 (1963).

safeguards; and (3) the government's interest, including the fiscal and administrative burden that the additional or substitute procedural requirements would entail. *Id.* at 334–35, 96 S.Ct. 893.

A student's interest in a free public education has been deemed extremely important by courts, *see Newsome v. Batavia Local Sch. Dist.,* 842 F.2d 920 (6th Cir.1988). Here R.M.B. demonstrated great academic ability and was thriving in his classes and participating in band.

The value of requiring school officials to present exculpatory evidence or at least respond honestly to inquiries about such evidence is highly valuable to disciplinary proceedings. The additional burden the Plaintiff request is minimal. The field tests were already completed: all that need be required is that school officials respond honestly and openly to inquiries about exculpatory evidence. This imposes no financial burden and would not unduly burden the administrative process.

Based on the foregoing and the gross violation of R.M.B.'s due process rights, the Plaintiff has established a likelihood of success on the merits under *Mathews* and *Goss*.

**B. Irreparable Harm**

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, and that he is likely to suffer irreparable harm in the absence of preliminary relief. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). Deprivation of a constitutional right that cannot be remedied by monetary payment constitutes irreparable harm as a matter of law, and no further showing of irreparable harm is necessary. *Buck v. Stankovic,* 485 F.Supp.2d 576, 586 (M.D.Pa. 2007). The "requisite feared injury or harm must be irreparable not merely

serious or substantial," and "must be of a peculiar nature, so that compensation in money cannot atone for it." *Glasco v. Hills,* 558 F.2d 179, 181 (3d Cir. 1977).

      R.M.B. will suffer irreparable harm if Defendants do not reinstate him, as he was wrongfully dismissed from the school as a result of a breach of his due process. In *Jones v. Board of Governors of University of North Carolina,* 557 F. Supp. 263 (D.C. N.C. 1983), which involved a dismissed nursing student, the court found that the student's delay in obtaining her degree satisfied the standard of irreparable harm necessary for an injunction. The court held that "[a]lthough it may be difficult to put a precise dollar value on plaintiff[']s damages..., it is clear that plaintiff could never be adequately compensated for these injuries, whatever their degree." The court further held that "[i]n addition, a quiet exoneration at some point in the future could never fully erase the highly stigmatizing effect that defendants' actions against plaintiff have had and will continue to have, if the plaintiff is right in her claim." *Id.* at 266. *Also see Tully v. Orr*, 608 F. Supp. 1222, 1226 (E.D. N.Y. 1985) (The delay in a student's dismissal "in both his graduation and commissioning as an officer" and the "loss of status involved, including the indelible stigma of having once been disenrolled" cannot be adequately compensated at law.) R.M.B. will never be able to erase the stigma of being suspended for a day shy of one full year. He has suffered the damage to his reputation, which is why a reinstatement to the BCPS at Stanton River Middle School is necessary.

      The other options for R.M.B. are academically inferior to return to school. An alternative school or home-schooling does not provide R.M.B. with the adequate academic, extracurricular or social support. R.M.B. is not able to participate in the extracurricular activities available at a normal public school, *i.e.,* band. Because he is

banned from school property, he cannot participate in any extracurricular activities until he is readmitted. Alternative schools have no extracurricular activities. *See Beattie v. Line Mountain Sch. Dist.*, 992 F. Supp. 2d 384, 396 (M.D. Pa. 2014) (enjoining school district from preventing female students from joining wrestling team, because there were no equivalent opportunities available for the quality and frequency of instruction or participation which would cause irreparable harm in development as a wrestler); *Adams By & Through Adams v. Baker,* 919 F.Supp. 1496, 1504 (D.Kan.1996) ("Without temporary injunctive relief, plaintiff would miss more opportunities to compete, practice, and learn the sport of wrestling. Such missed opportunities would cause her to fall behind in her development as an athlete and would quite probably, as a practical matter, prevent her from being able to compete in the future.").

R.M.B. played in the band at BMS and he wants to participate in the program or a similar program in the future. More time away from instruments, lessons and teaching in this extracurricular activity will set R.M.B at a disadvantage in participation in the future. There is no other alternative to the instruction of public school bands available to R.M.B.

Finally, R.M.B. is not getting the advanced teaching or edifying environment that he was getting at BMS. R.M.B. has demonstrated exceptional academic ability and was enrolled in several advanced classes in BMS. The environment at alternative schools is intimidating and counterproductive, especially for a child such as R.M.B. who has never been in serious trouble at school. Prior to this ordeal, R.M.B. was a confident and productive student. In the time that he has missed from his usual education environment, his parents and those around him have noticed depression, anxiety, self-deprecation, and

fatalism. His psychiatrist, who has written letters requesting that R.M.B. be reinstated, has affirmed this irreparable and growing harm.[5]

In sum, the education available to R.M.B. outside of the regular school environment is academically inferior and imposes unwanted environmental stress, influence, and stigma on him. Missing another semester will irreparably harm R.M.B. Any trial in this case would likely not take place before the school year ends (and likely not before the 364-day suspension ends). Thus, the harm he is subjected to by having to attend an alternative school or be homeschooled cannot be adequately redressed at trial.

**C. Balancing the Hardships**

In considering whether to grant the requested preliminary injunction, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter,* 555 U.S. at 30 (citing *Amoco Production Co.,* 480 U.S. 531, 542, 107 S. Ct. 1396 (1987)); *Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Engineers*, 890 F. Supp. 2d 688, 694-95 (S.D.W. Va. 2012) ("The Court must compare the harm to Plaintiffs in not granting an injunction to the harm caused to Defendants if an injunction is granted; an injunction can only be granted if the former outweighs the latter."). Here, the balance of the equities favors granting the preliminary injunction.

The education of R.M.B. is an important and valid interest. His parents will either have to send him to the Alternative School or homeschool R.M.B. As already discussed, the alternative school and homeschooling greatly prejudice the social, extracurricular and academic growth of R.M.B. Furthermore, homeschooling is a constant and continual

---

[5] See Exhibit 3, which will be submitted under separate cover due to it containing confidential mental health information.

strain on his parents. Contrarily, a return to public school restores the norm, is not unduly prejudicial nor unreasonable for Defendants as they are in the business of providing public education, and this injunctive relief avoids further harm to R.M.B.

If R.M.B. were admitted to SRMS there would be a minimal affect on that school. He could be assimilated quickly and easily with minimal strain on the administration or students. In this case, the harm to Plaintiffs in not granting an injunction outweighs the harm to Defendants in granting an injunction.

### D. The Public Interest

In the exercise of sound discretion with regard to whether to grant a preliminary injunction "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter,* 555 U.S. at 30 (*citing Weinberger v. Romero-Barcelo,* 456 U.S. 305, 311-12, 102 S. Ct. 1798 (1982)). As discussed in the sections above, children should not be suspended, expelled, or otherwise punished for acts that they did not do. Children may pretend and have wild imaginations, but their superiors should be held to more rigid standards of honesty, forthrightness and common sense.

A significant public interest exists with regard to maintaining the safety of other students, the proper education environment for other students, teachers and administrators. If R.M.B. were reinstated at SRMS, he would not threaten any of these interests. A boy who, at most, pretended to bring marijuana to school will not impede the efficiency of his new school. The impact on the public will be *de minimus*, while the advantage to the child will be great.

### III. Conclusion

The Fourth Circuit Court of Appeals has overruled the Circuit's previous preliminary injunction tests from *Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.,* 550 F.2d 189 (4th Cir.1977). *See League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 250 (4th Cir. 2014), citing *Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342 (4th Cir.2009). Under the *Blackwelder* analysis, a strong showing on the likelihood of success on the merits, could sway the court on a close call in the other three aspects of the injunction test. *Id.* Now, all four prongs of the test must be met by the movant. Regardless of this heightened standard, Plaintiff has demonstrated that a preliminary injunction reinstating R.M.B at Stanton River Middle School is proper, fair and supported by law.

RESPECTFULLY SUBMITTED,
R.M.B., by his next friends and parents,
Robert Bruce Bays and Linda Markham Bays

*/s/ Melvin E. Williams*
Of Counsel

Melvin E. Williams (VSB No. 43305)
MEL WILLIAMS PLC
1320 Third Street, SW
Roanoke, Virginia 24016
540-266-7800
540-206-3857 *facsimile*
mel@melwilliamslaw.com
   Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that this pleading will be served on Defendants via F.R.Civ.P. 4(c) service of summons procedures along with the Complaint filed herein.

                                                */s/ Melvin E. Williams*
                                                Of Counsel