# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| R.M.B., ET AL., | CIVIL NO. 6:15-cv-00004 |
| *Plaintiff,* | |
| v. | <u>Memorandum Opinion</u> |
| BEDFORD COUNTY SCHOOL BOARD, ET AL., | |
| *Defendant.* | JUDGE NORMAN K. MOON |

Plaintiff R.M.B. ("Plaintiff" or "R.M.B.") filed this civil rights action against Defendants Brian Wilson ("Wilson"), Frederick Duis, Jr. ("Duis"), and M.M. Calohan ("Calohan") pursuant to 42 U.S.C. § 1983, alleging, among other things, that Wilson and Duis suspended R.M.B. from Bedford Middle School in violation of the Due Process Clause of the Fourteenth Amendment. This matter is now before me on a motion to dismiss filed by Duis and Wilson, as well as a motion to dismiss filed by Calohan. For the reasons stated herein, I will deny both motions.

## I. BACKGROUND

### A. Statement of Alleged Facts

This case concerns the 364-day suspension of eleven-year-old R.M.B. from Bedford Middle School ("BMS"). On September 22, 2014, BMS Assistant Principal Brian Wilson discovered "crumpled leaves" in R.M.B.'s backpack. Wilson directed BMS Resource Officer M.M. Calohan to "field test" the substance to determine if the leaves were marijuana. Calohan did so on three separate occasions, and each time, the leaves tested negatively for marijuana.

Calohan relayed this information to Wilson. Though Wilson knew the leaves found in R.M.B.'s backpack tested negatively for marijuana, he nonetheless brought disciplinary charges

1

against R.M.B. in an effort to expel him from BMS. He also directed Calohan to initiate criminal proceedings in the Bedford County Juvenile & Domestic Relations District Court ("J&DR Court"). There, Calohan appeared before an intake officer and stated under oath that she found marijuana in R.M.B.'s possession, resulting in the issuance of a petition charging R.M.B. with possession of marijuana in violation of Virginia Code § 18.2-250.1.

Approximately one week later, Duis, the Chief Operations Officer for Bedford County Public Schools, conducted a hearing on R.M.B.'s charge of marijuana possession.[1] The complaint is unclear as to the evidence presented in support of the case against R.M.B, but at the very least, the complaint alleges that Wilson testified at the hearing. During Wilson's testimony, R.M.B.'s parents "specifically and repeatedly asked Wilson the results of the field tests conducted by [Defendant M.M.] Calohan." Am. Compl. ¶ 29. Wilson, however, refused to respond. Duis then suspended R.M.B. for possession of marijuana.

Nearly two months later, on November 22, 2014, R.M.B. and his parents appeared before the J&DR Court to contest R.M.B.'s criminal charge of marijuana possession. When they arrived, the prosecutor "advised them that the field tests of the crumpled leaves were negative for marijuana, and no other evidence existed that R.M.B. had possessed marijuana." *Id.* ¶ 39. The prosecutor then moved for dismissal, and the J&DR Court dismissed the charge.

R.M.B.'s parents informed Duis of the prosecutor's remarks regarding the lack of evidence and requested that R.M.B. be allowed to return to BMS. Duis, however, rejected their request. R.M.B.'s parents had no further recourse within the school's administrative process, as the deadline to appeal the school's decision had already passed. As a result, they continued R.M.B's education in a home school program, incurring substantial costs along the way.

---

[1] As a component of Duis' job responsibilities, he serves as an administrative hearing officer.

Because of the events surrounding his 364-day suspension, R.M.B. claims that he now suffers from anxiety and depression and is suspicious and fearful of authority figures.

## B. Procedural History

R.M.B. initiated this action through his parents, Robert and Linda Bays, on February 3, 2015. In his complaint, R.M.B. asserted a violation of procedural due process against Wilson and Duis (Count I); a federal claim of malicious prosecution against Calohan (Count II); a state law claim of malicious prosecution against Calohan (Count III); a request for injunctive relief against Bedford County Public Schools ("BCPS") and Bedford County School Board ("BCSB") (Count IV); and a claim for damages on behalf of Robert and Linda Bays (Count V).

On February 27, 2015, Defendants Duis and Wilson and Defendant Calohan separately moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and on April 21, 2015, I held a hearing on Defendants' motions. At the hearing, counsel for Plaintiff represented that Defendants have allowed R.M.B. to return to BCPS as a student. As this was the sole relief sought in Count IV of his complaint, Plaintiff has withdrawn his claim against BCSB and BCPS, and they are no longer parties to this action. An issue also arose as to the sufficiency of Plaintiff's federal malicious prosecution claim. To address this concern, I granted Plaintiff leave to amend his complaint to allege additional facts in support of his claim.

On May 8, 2015, Plaintiff filed his first amended complaint. In his filings, counsel for Plaintiff represents that he cannot, in good faith, allege sufficient facts to state a federal claim of malicious prosecution. Plaintiff has therefore withdrawn Count II of his complaint. In its place, he asserts a violation of substantive due process against Defendants Wilson and Duis (Count VI). He also brings an additional state law claim of malicious prosecution against Wilson (Count III).

On June 5, 2015, Defendants renewed their separately filed motions to dismiss Plaintiff's complaint. Duis and Wilson move to dismiss Counts I and III of Plaintiff's complaint, while Calohan moves to dismiss Count III. All Defendants seek dismissal of Count V. Because Defendants failed to raise argument with respect to Plaintiff's substantive due process claim, this opinion will confine itself to addressing the sufficiency of Counts I, III, and V.

## II. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint . . . [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court considering dismissal under Rule 12(b)(6) must take the facts in the light most favorable to the plaintiff. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, a complaint must contain enough factual allegations to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In evaluating "plausibility," the court may not rely on mere "labels and conclusions" or a plaintiff's "formulaic recitation of a cause of the elements of a cause of action." *Id.* at 555. Instead, the factual allegations must be enough to raise "a right to relief above the speculative level." *Id.* Thus, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Procedural Due Process (Count I)

To state a claim for a violation of procedural due process, R.M.B. must allege: "(1) a

4

cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)). R.M.B. alleges Duis and Wilson suspended him without providing adequate process, thereby depriving him of his right to public education in violation of the Due Process Clause of the Fourteenth Amendment.[2] Duis and Wilson concede that R.M.B. was entitled to due process protections in connection with his suspension hearing. The parties' dispute concerns the level of protection necessary to satisfy due process. Duis and Wilson argue R.M.B.'s claim fails because they provided him with notice of the charge and an opportunity to contest it in a disciplinary hearing.[3] In response, R.M.B. claims the hearing's procedures were constitutionally deficient because Duis and Wilson failed to

---

[2] R.M.B. also claims the hearing process deprived him of a liberty interest in his good reputation, which is independently sufficient to satisfy the first element of his procedural due process claim. *Goss v. Lopez*, 419 U.S. 565, 575 (1975) ("Neither the property interest in educational benefits temporarily denied . . . nor the liberty interest in reputation . . . is so insubstantial that suspensions may be constitutionally imposed by any procedure the school chooses . . . .").

[3] Defendants also argue, without citation to relevant case law, that R.M.B.'s due process claim should be barred for failure to pursue an appeal within the school's administrative process, thereby exhausting state administrative remedies. Administrative remedies must be exhausted in those cases where "Congress imposes an exhaustion requirement by statute." *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 579 (1989). As an example, prisoners seeking to litigate claims under the Prisoner Litigation Reform Act ("PLRA") must exhaust available administrative remedies, as the PLRA itself imposes such a requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Otherwise, the Supreme Court has held that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983," largely because such a requirement would be inconsistent with congressional intent and the legislative history of the statute. *Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 516 (1982); *accord Quarterman v. Byrd*, 453 F.2d 54, 57 (4th Cir. 1971) (reversing a district court for imposing an exhaustion requirement on a student pursuing a § 1983 action against a school official); *Doe v. Rockingham Cnty. School Bd.*, 658 F. Supp. 403, 410 (W.D. Va. 1987) (assuming that an exhaustion requirement does not apply to a "cause of action for due process violations"). Given the foregoing, exhaustion of state administrative remedies is not required in this context, and R.M.B.'s failure to appeal does not bar his procedural due process claim.

5

disclose the results of Calohan's field tests.

"Once it is determined that due process applies, the question remains what process is due." *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972). In *Goss v. Lopez*, 419 U.S. 565 (1975), the Supreme Court addressed the due process rights of students facing short-term suspension. At a minimum, students facing a suspension of ten days or less are entitled to notice and a hearing. *Goss*, 419 U.S. at 579. The notice should apprise the student of the charges against him, and the hearing should offer the student an opportunity to "tell his [or her] side of the story." *Id.*

Duis and Wilson maintain they provided sufficient process by complying with Virginia Code § 22.1-277.05, which requires schools to provide students and their parents with notice of their right to a disciplinary hearing before imposing a long-term suspension.[4] It is true that, "[a]t the very minimum[,] . . . students facing suspension . . . must be given some kind of notice and afforded some kind of hearing," but the formality of providing a hearing, in and of itself, does not satisfy the requirements of due process. "The hearing . . . must be a real one, not a sham or a pretense." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 126, 168 (1951) (Frankfurter, J., concurring) (quoting *Palko v. Connecticut*, 302 U.S. 319, 327 (1937)). Indeed, due process is a "requirement that cannot be deemed to be satisfied by mere notice and a hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court . . . ." *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).

Turning to the sufficiency of Plaintiff's allegations, R.M.B. claims that Wilson and Duis committed a due process violation by failing to disclose the results of Calohan's field tests at his

---

[4] Under Virginia Code § 22.1-277.05, "[a] pupil may be suspended from attendance at school for more than ten days after providing written notice to the pupil and his parent of the proposed action and the reasons therefor and of the right to a hearing before the school board . . . ."

6

disciplinary hearing. Although *Goss* warned that long-term suspensions may require more "formal procedures" to satisfy due process, the Supreme Court did not elaborate on what these procedures may entail. *Goss*, 419 U.S. at 584. In the absence of such direction, lower courts routinely apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), in determining the propriety of a school's disciplinary procedures. *See, e.g., Newsome v. Batavia Local School Dist.*, 842 F.2d 920, 923-24 (6th Cir. 1988); *Johnson v. Temple Univ.*, No. 12-515, 2013 WL 5298484, at *7 (E.D. Pa. Sept. 19, 2013). In *Mathews*, the Supreme Court explained:

> the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

With respect to the first factor, R.M.B.'s interests in completing his education as well as avoiding unfair charges of misconduct are substantial. *Goss*, 419 U.S. at 576. Next, where exculpatory evidence exists and is not disclosed, the likelihood that administrators will impose unwarranted suspensions increases dramatically. *See, e.g., Burns v. Alexander*, 776 F. Supp. 2d 57, 89 (W.D. Pa. 2011) ("When . . . a professional [with a liberty interest in reputation] can be [disciplined] pursuant to an evidentiary standard that fails to account for exculpatory evidence, the risk that or she will be erroneously deprived of that liberty interest is intolerably high."). Moreover, the value of requiring school officials to disclose such evidence is substantial: it brings transparency to the decision-making process and provides the student with a meaningful opportunity to meet the charges against him. Finally, turning to the government's interest in avoiding administrative burden, requiring disclosure of exculpatory evidence will not be

7

burdensome where, as here, the evidence is already in the school's possession. Therefore, I hold that the *Mathews* factors decidedly weigh in Plaintiff's favor.

R.M.B., faced with the threat of a long-term suspension, has a due process right to exculpatory evidence, at least where such evidence is already within the school's control. *See also Greene v. McElroy*, 360 U.S. 474, 496 (1959) ("Certain principles have remained relatively immutable in our jurisprudence. One of these is that where government action seriously injures an individual . . . the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."). Plaintiff's allegations are thus sufficient to allege a due process violation against Defendants Wilson and Duis.

**B. Malicious Prosecution (Count III)**

In his amended complaint, R.M.B. asserts a state law claim of malicious prosecution against Defendants Calohan and Wilson for their role in obtaining criminal charges against him. In order to state a claim for malicious prosecution, R.M.B. must allege four elements: "that the prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Lewis v. Kei*, 708 S.E.2d 884, 889 (Va. 2011). Calohan and Wilson argue R.M.B.'s malicious prosecution claim fails because he does not allege any facts from which one could draw an inference of malice. Malice, however, may be inferred by virtue of the fact that Calohan pursued criminal charges against R.M.B. without probable cause. *Reilly v. Shepherd*, 643 S.E.2d 216, 219 (Va. 2007) (noting that "[m]alice may be inferred from a lack of probable cause . . . .")

Probable cause is defined as "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind . . . that the [individual] is guilty of the crime of which he is suspected," and "whether probable cause existed is determined as of the time when the action

8

complained of was taken." *Id.* At the time Calohan petitioned for criminal charges, she had tested the substance found in R.M.B.'s possession three times and knew that it tested negatively for marijuana. Because she administered these tests, a finder of fact could infer that Calohan did not reasonably believe R.M.B. was guilty of marijuana possession. Accordingly, because malice may be inferred from a lack of probable cause, Plaintiff's complaint is sufficient to allege malice.

### C. Robert and Linda Bays' Request for Damages (Count V)

In Count V of Plaintiff's complaint, Robert and Linda Bays make a claim for damages against all Defendants. Wilson, Duis, and Calohan argue they have no legal right to make such a claim and have therefore moved to dismiss Count V. In *Moses v. Akers*, 122 S.E.2d 864, 866 (Va. 1961), the Virginia Supreme Court noted that two causes of action arise out of an injury to a minor: one on behalf of the minor, and another on the parents' behalf for loss of services during minority and necessary treatment expenses. A parents' common law right to assert a claim for damages is thus well-established in Virginia. Defendants, however, contend that their claim for damages is limited by the language of Virginia Code § 8.01-36(B), which states:

> [f]or causes of action that accrue on or after July 1, 2013, . . . [a]ny parent or guardian . . . who has paid for or is personally obligated to pay for past or future expenses to cure or attempt to cure the infant shall have a lien and right of reimbursement against any recovery by the infant up to the amount the parent or guardian has actually paid or is personally obligated to pay. The right to reimbursement of any parent or guardian shall accrue upon the first tender of funds of any recovery from a tort-feasor to the infant.

Virginia Code § 8.01-36(B).

The language of § 8.01-36(B) speaks to a parent's ability to obtain a lien for expenses he has paid to "cure" a child's tort-related injury. It does not, as Defendants claim, contain language that limits the Bays' common law right to pursue damages. "Absent a clearly expressed legislative intent . . . statutes should not be construed to displace long-established

9

common law principles." *Newman v. Newman*, 593 S.E.2d 533, 566 (Va. Ct. App. 2004) (citing *Herndon v. St. Mary's Hosp., Inc.*, 587 S.E.2d 567, 569 (Va. 2003)). Accordingly, Defendants are incorrect in asserting that § 8.01-36 precludes the Bays' claim for damages.

Defendants also argue that § 8.01-36 bars the Bays' claim for attorney's fees spent in defending the criminal charges brought against R.M.B. As is codified in § 8.01-36, parents have a common law right to recover "expenses" paid in attempting to "cure" their child's injury. *Moses*, 122 S.E.2d at 866. It does not appear that this right has ever been extended to cover attorney's fees incurred in defending against criminal charges, and Plaintiff has cited no authority that suggests otherwise. Regardless, a request for damages is not a "claim" that is subject to dismissal, and I therefore decline the invitation to address Defendants' argument at this time. *See Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 620 (W.D. Va. 2014) ("Because a demand for relief is not part of a plaintiff's statement of the claim, the nature of the relief sought is immaterial to the question of whether a complaint adequately states a claim upon which relief can be granted."); *Janis v. Nelson*, No. CR. 09-5019, 2009 WL 4505935, at *7 (D.S.D. Nov. 24, 2009) (noting that "[a] plain reading of Rule 12(b)(6) indicates that the rule may be used only to dismiss a 'claim' in its entirety") (citations omitted).

## IV. CONCLUSION

For the reasons stated above, Defendants' motions to dismiss will be denied. An appropriate order accompanies this memorandum opinion.

Entered this \_\_\_7th\_\_\_ day of July 2015.

*Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE